1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                                AT SEATTLE

8   LEONARD MARK CARR,

9                            Plaintiff,           CASE NO. C17-0900-BHS-MAT

10        v.
                                                  REPORT AND RECOMMENDATION
11  NANCY A. BERRYHILL, Acting                    RE: SOCIAL SECURITY DISABILITY
    Commissioner of Social Security,              APPEAL
12
                             Defendant.
13

14        Plaintiff Leonard Mark Carr proceeds through counsel in his appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16  denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security

17  Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having considered the

18  ALJ's decision, the administrative record (AR), and all memoranda of record, the Court

19  recommends that this matter be REVERSED and REMANDED for further administrative

20  proceedings.

21  //

22  //

23  //

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] He has a 10th-grade education and previously worked as an aerospace sheet metal mechanic and sheet metal shop owner. (AR 246, 260.)

Plaintiff applied for DIB and SSI in March 2014, alleging disability beginning August 30, 2013.[2] (AR 210-19.) His applications were denied at the initial level and on reconsideration, and he timely requested a hearing. (AR 157-60, 163-69.)

On February 26, 2016, ALJ Wayne Araki held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 39-92.) On March 25, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 18-32.) The Appeals Council denied Plaintiff's request for review on April 25, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked after the alleged onset date, but the work activity did not rise to the level of substantial gainful activity. (AR 20.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's ischemic heart disease, affective disorder (including

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

[2] At the administrative hearing, Plaintiff amended his alleged onset date to October 1, 2013. (AR 42.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 2

depressive disorder), anxiety disorder (including generalized anxiety disorder and panic disorder with agoraphobia), and substance abuse disorder. (AR 20-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 22-23.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with additional limitations: he cannot climb ladders, ropes, or scaffolds. He can frequently climb ramps or stairs. He cannot work at heights or operative heavy equipment. He can have occasional exposure to extreme cold, extreme heat, vibrations and atmospheric conditions. He can remember, understand, and carry out instructions and tasks generally required in occupations with specific vocational preparation level 1-2. He can have occasional, superficial interactions with the general public and can have occasional interaction with co-workers and supervisors. (AR 24.) With that assessment, the ALJ found Plaintiff unable to perform his past relevant work.

The ALJ then proceeded to step five of the sequential evaluation, where the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as hand packager, inside laundry worker, and cleaner. (AR 30-31.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) excluding arthritis and low back pain at step two, (2) assessing medical opinion evidence, and (3) failing to perform a two-step drug addiction and alcoholism (DAA) analysis. He asks that the ALJ's decision be reversed and his claim remanded for either an award of benefits or for further proceedings. Dkt. 14 at 18. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Step two</u>

Plaintiff argues that the ALJ erred in ignoring his arthritis diagnosis and finding that his back pain was not a medically determinable impairment. A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms. 20 C.F.R. § 404.1521.

Even if Plaintiff is correct that his arthritis and/or low back pain should have been listed as a severe medically determinable impairment at step two, he has not established that this error is harmful, because the ALJ did not find Plaintiff not disabled at step two. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Moreover, step two was decided in [plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.").

Although Plaintiff argues that medical opinion evidence suggested that the omitted conditions caused greater limitations than those found by the ALJ (Dkt. 14 at 6), the Court will address *infra* whether the ALJ erred in discounting that opinion evidence.

DAA analysis

Plaintiff argues that because the ALJ found that his substance abuse disorder was a severe impairment at step two, the ALJ should have performed a two-step DAA analysis to determine the impact of the DAA on his functioning. Dkt. 14 at 16.

Claimants are not entitled to disability benefits if DAA is material to their disability. Social Security Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013). If an ALJ finds that a claimant is disabled when his or her DAA is included, at any point in the five-step sequential evaluation, the ALJ must then restart the five-step sequential evaluation, factoring out the DAA to determine whether the claimant would still be disabled in the absence of DAA. *See id*.; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

Plaintiff argues that the ALJ erred in prematurely factoring out his DAA, by crediting a State agency opinion written by Jeffrey Merrill, M.D., describing Plaintiff's RFC for medium work "independently of [his significant and ongoing alcohol use]". (AR 105.) Plaintiff contends that the ALJ should not have considered his RFC "independently" of his DAA without performing a full two-step DAA analysis.

The Commissioner posits an alternate interpretation of Dr. Merrill's opinion: she contends that the opinion defining Plaintiff's capacity to perform medium work "independently of [his significant and ongoing alcohol use]" could mean that Plaintiff could perform medium work *despite* his DAA. Dkt. 15 at 8. The Commissioner's reading is strained at best, but even if Dr. Merrill did factor out Plaintiff's DAA, an ALJ would not necessarily harmfully err in relying on

such a medical opinion, because the ALJ must ultimately determine whether claimants are disabled in the absence of DAA.

Nonetheless, the ALJ's failure to provide any findings regarding the impact of Plaintiff's DAA at step two or later in the decision renders it impossible to determine how the ALJ interpreted Dr. Merrill's opinion or any other evidence regarding any functional limitations caused by Plaintiff's DAA. That the ALJ found Plaintiff's substance abuse disorder to be severe at step two, but failed to identify any limitations caused by it (or explain why no limitations were caused by it) leaves the Court without the ability to meaningfully review the reasoning underlying the ultimate disability determination as it pertains to Plaintiff's substance abuse disorder. *See, e.g.*, *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("[M]eaningful review of an administrative decision requires access to the facts and reasons supporting that decision.").

Accordingly, this case should be remanded to allow the ALJ to provide findings regarding the impact of Plaintiff's substance abuse disorder at step two and/or in assessing Plaintiff's RFC, and to conduct a full two-step DAA analysis if necessary. The ALJ should also specifically address how Dr. Merrill's opinion is interpreted with respect to Plaintiff's DAA, and should reconsider other medical opinions pertaining to Plaintiff's DAA as well.

Medical opinion evidence

Plaintiff argues that the ALJ erred in assessing a variety of medical opinions, each of which the Court will address in turn.

<u>Legal standards</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Lay witness testimony, including opinions written by non-acceptable medical sources, as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). *But see Molina v. Astrue*, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (describing how the failure to address lay testimony may be harmless). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)

<u>Gregory Lawson, exercise physiologist</u>

Plaintiff was referred to Mr. Lawson in October 2014 as part of a cardiovascular rehabilitation program. (AR 832-33, 842-43.) Mr. Lawson assessed Plaintiff's current level and set goals for a two-month program. (AR 832-33.) He described Plaintiff as having "[s]ignificant musculoskeletal limits to activity." (AR 833.)

Plaintiff argues that the ALJ erred in failing to discuss Mr. Lawson's assessment in the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 7

decision. Dkt. 14 at 7.  The Court agrees with the Commissioner, however, that Mr. Lawson's assessment of Plaintiff's exercise tolerance and goals were not probative evidence as to his RFC, i.e. the most he could do. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC "is the most you can still do despite your limitations.").  Because Mr. Lawson did not opine as to Plaintiff's specific functional abilities or limitations, his treatment note is not significant, probative evidence that an ALJ is required to discuss. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ "not required to discuss evidence that is neither significant nor probative").  Therefore, the ALJ did not err in failing to discuss Mr. Lawson's note.

Gary Gaffield, D.O.

Dr. Gaffield examined Plaintiff in August 2014, and diagnosed him with type two diabetes, chronic alcoholism, probable liver failure due to alcoholism, and generalized weakness "probably secondary to his alcoholism."  (AR 601.)  Dr. Gaffield concluded that Plaintiff could stand/walk for a total of two hours per day and lift/carry 20 pounds occasionally and 10 pounds frequently, "limited by his overall weakness." (*Id*.)  Dr. Gaffield placed no sitting or manipulative restrictions on Plaintiff.  (AR 601-02.)  Dr. Gaffield found that Plaintiff's impaired balance and/or weakness required him to avoid postural activities as well as heights, heavy equipment, stairs and ladders, obstacles in his pathway, and irregular surfaces.  (AR 602.)

The ALJ characterized Dr. Gaffield's opinion as limiting Plaintiff to light work, and explained that he discounted the opinion because Dr. Gaffield did not consider Plaintiff's heart condition.  (AR 28-29.)  The ALJ also found that Plaintiff's "performance during Dr. Gaffield's examination is not reflective of his baseline functioning[,]" as indicated by treatment notes that show some symptom flares but generally fail to corroborate findings of significant functional limitations.  (AR 29.)

Plaintiff argues that the ALJ erred in characterizing Dr. Gaffield's opinion as describing an RFC for light, rather than sedentary, work. Dkt. 14 at 9. Even assuming Plaintiff is correct, any error is harmless because the ALJ's translation of Dr. Gaffield's opinion into an exertional level is superfluous to his assessment of its probative value.

Plaintiff also argues that Dr. Gaffield's failure to consider his heart condition does not explain why the ALJ discounted the opinion, because consideration of another condition would have led Dr. Gaffield to find Plaintiff more restricted, rather than less restricted. Dkt. 14 at 10. The Commissioner does not explicitly defend this line of the ALJ's reasoning, and the Court agrees with Plaintiff that it is not clear why Dr. Gaffield's failure to specifically address the impact of Plaintiff's heart condition would render his findings less reliable. Plaintiff told Dr. Gaffield that he had recently been hospitalized for chest pain and had stents placed (AR 597-98), and it therefore appears that Dr. Gaffield was at least somewhat aware of this aspect of Plaintiff's medical history.

Any error related to Dr. Gaffield's consideration of Plaintiff's heart condition is harmless, however, because the ALJ cited an additional, valid reason to discount the opinion: Dr. Gaffield's findings were inconsistent with documentation related to Plaintiff's functional limitations. As summarized earlier in the ALJ's decision, the record showed that after Plaintiff's heart surgery, his condition improved and stabilized, and he reported no significant functional limitations. (AR 25-26 (citing AR 277, 611, 701).) The ALJ also noted that Plaintiff testified at the hearing that he was able to return to work forming metal in February 2015, and was terminated due only to mental limitations. (AR 26 (referencing AR 55-57).) The ALJ did not err in discounting Dr. Gaffield's opinion as inconsistent with the remainder of the record as to Plaintiff's physical abilities. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Although Plaintiff cites to evidence that mentions various symptoms, this evidence does not establish the existence of any particular functional limitations caused by those symptoms. Dkt. 14 at 10 (citing AR 305, 503, 505-06, 520-21, 546, 599-600, 606-07, 703, 786, 832-33, 929-31, 938, 963). Particularly because a majority of the records cited by Plaintiff are treatment notes written by a psychiatric nurse, who neither examined nor evaluated Plaintiff's physical symptoms, this evidence does not undermine the ALJ's summary of the medical evidence pertaining to Plaintiff's physical functioning.

State agency opinions

As discussed *supra*, the ALJ gave significant weight to Dr. Merrill's opinion, which was written at the time of the State agency's initial review.[3] Plaintiff argues that the ALJ erred in relying on Dr. Merrill's opinion to reject opinions written by Dr. Gaffield and treating physician Laird Findlay, M.D. Dkt. 14 at 11. But the ALJ did not cite Dr. Merrill's opinion as a basis for discounting the opinions of Drs. Gaffield and Findlay; instead the ALJ referenced inconsistent treatment notes. (AR 27-29.) Thus, this portion of Plaintiff's argument is a red herring.

Plaintiff also argues that the ALJ cited no specific evidence that corroborates Dr. Merrill's opinion as to his RFC, and contends that the contrary opinions of Drs. Gaffield and Findlay were supported by examination findings. Dkt. 14 at 11-12. Plaintiff overlooks the evidence discussed by the ALJ earlier in the decision and discussed *supra*, such as Plaintiff's reports of improvement after heart surgery, his ability to physically perform work during the adjudicated period, and his

---

[3] Plaintiff argues that the ALJ inaccurately found that Dr. Merrill examined him, when in fact Dr. Merrill is a State agency non-examining medical consultant. Dkt. 14 at 11. The ALJ stated that Dr. Merrill "evaluated the claimant in September 2014" (AR 29), which does not necessarily imply an in-person evaluation. Any error is harmless, however, as the ALJ is not required to identify the status of an opinion's author.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 10

self-report of minimal physical functional limitations.

Additionally, to the extent Plaintiff argues that Dr. Merrill was hampered by his inability to review Mr. Lawson's report, because his review was completed before Mr. Lawson assessed Plaintiff (Dkt. 14 at 13), this argument is without merit because as discussed *supra*, Mr. Lawson's report does not mention any specific functional limitations and does not constitute significant, probative evidence. Accordingly, Mr. Lawson's report would not have any bearing on Dr. Merrill's ability to rate Plaintiff's functional limitations.

Plaintiff also challenges the ALJ's assessment of the State agency opinion written at the reconsideration stage, by Elizabeth St. Louis, M.D. Dr. St. Louis found that Plaintiff could *inter alia* lift/carry 20 pounds occasionally and 10 pounds frequently, and could stand, walk, or sit for about six hours each in an eight-hour workday. (AR 135-36.) The ALJ described Dr. St. Louis's opinion as "adopt[ing]" Dr. Gaffield's findings, and reiterated that Dr. Gaffield's opinion (and therefore Dr. St. Louis's opinion) are inconsistent with subsequent treatment notes and statements. (AR 29.)

Plaintiff points out that Dr. St. Louis's opinion is less restrictive than Dr. Gaffield's as to standing/walking, and therefore the ALJ mischaracterized it. Dkt. 14 at 16. That may be true with respect to the stand/walk restrictions, but other restrictions were similar. (*Compare* AR 135-36 *with* AR 601-02.) In any event, the ALJ referred to evidence inconsistent with both Dr. St. Louis's and Dr. Gaffield's opinion as to Plaintiff's functionality, and this evidence is a specific, legitimate reason to discount Dr. St. Louis's opinion. *See Tommasetti*, 533 F.3d at 1041.

Dr. Findlay

Dr. Findlay, Plaintiff's primary care physician, completed a checkbox assessment of Plaintiff's physical functioning in July 2015. (AR 634-38.) Dr. Findlay opined that Plaintiff could

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 11

*inter alia* sit or stand/walk for two hours each per day, could lift no more than 10 pounds occasionally, and could not walk more than three blocks at a time without rest or severe pain. (*Id*.) The ALJ found that this opinion was not supported by objective findings, because Plaintiff's cardiac impairment did not cause sitting, standing, walking, or lifting restrictions to this degree. (AR 28.) The ALJ also cited contrary findings from consultative examining psychologist, Jennifer Palermo, Ph.D., as undermining Dr. Findlay's opinion regarding Plaintiff's mental limitations. (AR 28 (citing AR 591-95).)

Plaintiff argues that the ALJ's assessment of Dr. Findlay's opinion overlooks the corroboration of the opinions of Dr. Gaffield, Mr. Lawson, and Dr. St. Louis. Dkt. 14 at 14. This argument is unpersuasive for several reasons. First, Dr. St. Louis did not examine Plaintiff, and therefore her opinion does not contain independent objective findings that could corroborate Dr. Findlay's opinion. Second, Mr. Lawson did not identify any specific functional limitations or clinical findings that could corroborate Dr. Findlay's opinion; Mr. Lawson's findings regarding Plaintiff's blood pressure or heart rate, for example, do not bear on his functionality. (AR 832-33.) Lastly, Dr. Gaffield's opinion is less restrictive than Dr. Findlay's, and therefore cannot fully corroborate it, and the ALJ also cited subsequent treatment notes showing that Plaintiff was more functional than found by Dr. Gaffield. As explained *supra*, the ALJ did not err in discounting Dr. Gaffield's opinion, and therefore this discounted opinion does not bolster the probative value of Dr. Findlay's opinion. Plaintiff has not shown that the ALJ erred in finding that Dr. Findlay's opinion was unsupported by objective evidence, or in discounting it on that basis. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Plaintiff also argues that the ALJ erred in rejecting Dr. Findlay's opinion in favor of Dr.

Merrill's opinion, because Dr. Merrill did not examine Plaintiff. Dkt. 14 at 15. But the ALJ did not cite Dr. Merrill's opinion as a reason to discount Dr. Findlay's opinion. Thus, this argument is a red herring.

In sum, Plaintiff has failed to show error in the ALJ's assessment of the medical opinion evidence. Nonetheless, to the extent necessary on remand, the ALJ should reconsider medical opinions pertaining to the effects of Plaintiff's DAA.

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 2, 2018**.

DATED this 13th day of February, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 13